WOOD *v.* THE CINCINNATI SAFE AND LOCK COMPANY.

1. Where a party has been induced to enter into and sign a written contract by false and fraudulent representations as to its contents, made by the opposite party, which were intended to deceive and did deceive the party signing, the latter may set up this fraud as a defense to an action against him upon the contract.
2. Under the ruling above announced, it was error to strike the plea filed by the defendant in the present case.

April 15, 1895. Brought forward from the last term.

Appeal. Before Judge HUNT. Spalding superior court. January term, 1894.

ROBERT T. DANIEL, for plaintiff in error.
JAMES S. BOYNTON, *contra.*

ATKINSON, Justice.

The plaintiff brought suit against the defendant upon a written order for an iron safe, a copy of which order is as follows, to wit:

"Town of Sunnyside, County of Spalding, State of Georgia. The Cincinnati Safe & Lock Co. 6/10, 1891. Please ship, to arrive Sept. 1, 1891, one of your No. 20 Fire & Burglar Proof Safes, as per your illustrated catalogues. Safe is to measure inside $23\frac{1}{4}$ inches high, $17\frac{1}{2}$ inches wide, and 14 inches deep; outside door to have combination lock, patent inside bolt work and movable cap; for which I agree to pay to your order the sum of two hundred dollars, as follows: cash $25.00, balance in 4 notes of one month between times. Safe delivered on board cars at Cincinnati, Ohio. Name painted on safe, George W. Wood. Remember Burglar in top, detachable dial. It is agreed that all deferred payments shall be settled for by note drawing eight per cent. interest after maturity ten per cent. Notes to be signed and forwarded to said company within five days after arrival

of safe at our nearest railroad station. In default of settlement, the whole amount becomes due and payable at once in cash. It is further agreed, that the title of said safe shall not pass until said safe is paid for in full, and shall remain your property until that time; in default of payment, you or your agent may take possession of and remove said safe without legal process. It is distinctly understood and agreed that this order shall not be countermanded by the maker or makers of same, and also that I represent myself to be good and legally responsible for goods above ordered. Nothing but shipment or delivery constitute an acceptance of this order by the Cincinnati Safe & Lock Co. This contract covers all agreements made between the parties hereto. $200.00. [Signed] Geo. W. Wood."

The defendant filed the plea of the general issue, and in addition thereto, a special plea of which the following is a copy:

"And for further plea defendant says, that the contract sued on was procured from the defendant by fraud, and should not be enforced by the court; neither should this defendant be held liable on the same. For defendant showeth, that the agent of the plaintiffs, who procured said contract, came to defendant's store on the 10th day of June, 1891, and tried to sell defendant a safe. Defendant declined to buy a safe. Said agent remained in the store of defendant for a long while, endeavoring to get defendant's order for a safe, but defendant repeatedly and persistently refused to buy a safe. Finally said agent said to defendant 'I am going to take your order for a safe, and if I don't hear from you before September 1st, we will ship it. Now, any time before that date, if you find you don't want it, write us, and we will not ship it.' To this, defendant replied, 'All right.' In a few minutes said agent went back to defendant's desk and began writing. Said agent asked defendant what time the train went up. Defendant told him, and said agent asked defendant for a ticket. Defendant is the railroad agent. Defendant sold said agent a ticket, and said agent continued to write, defendant returning to the front of the store. In a few minutes the train arrived, when said agent called defendant and

said, 'Please sign this,' holding to defendant a paper.
Defendant said, 'What is it? Let me read it.' Said
agent replied, 'It is only an agreement that if you take
the safe, it is to be ours until paid for. You haven't
time to read it. I will send you a duplicate to-morrow.
I have told you all that is in it. Sign it; I have to catch
that train.' Relying upon the representations of what
the said agent of said plaintiffs said and represented,
defendant signed said paper. Defendant further says
that said agent did not send him a copy of said paper
as agreed. Defendant, some time after said date, had,
long before the first day of September, wrote plaintiffs
not to ship the safe until they heard from him under the
agreement made with said agent. Defendant says he
had no opportunity to read said paper; that said agent
would not allow him to read the same; that said agent
by his conduct and manner acted and practiced a fraud
on the defendant in procuring his signature to said con-
tract, and the same is not therefore binding on him;
that in pursuance to said agreement made with said
agent, he wrote and notified said plaintiffs that he did
not want said safe, and so notified them before they
shipped the same; and said safe had never been accepted
or received by the defendant, and he should not be held
to pay for the same. But for the fraud practiced by said
agent, this defendant would not have signed said con-
tract, and said contract does not represent the agreement
between said agent and this defendant. And with this
defendant puts himself on his country."

Upon motion of the plaintiff's counsel, the court or-
dered that " so much of the defendant's plea as seeks to
set up a parol that defendant had a right to and did
countermand the order for the safe sued for, be stricken,
upon the ground that the same is an effort to change
and add to a written contract verbal stipulations differ-
ent and in conflict with the written contract, the same
being, in effect, to strike all pleas except the general
issue." Having stricken the defendant's special plea,
the court directed a verdict for the plaintiff. The de-
fendant moved for a new trial, (1) upon the general

grounds; (2) upon the further ground that the court erred in striking the defendant's plea; and (3) that the court also erred in directing a verdict. It is necessary to a determination of this case, that we consider only one of the alleged errors. If the court erred in striking the plea, the defendant is entitled to a new trial. If the judgment of the court was correct in striking the plea, he committed no error in directing a verdict.

Whatever may be the rights of third persons, it is a rule of law of universal acceptance, that as between the original parties thereto, fraud in its procurement voids a contract, and this upon the theory that, the consent of the parties being necessary to the binding force of a contract, if one, apparently consenting by the execution of a written contract, can show that he did not in fact consent to its terms as therein expressed, but that his apparent consent was induced by false and fraudulent practices, by means of which he was overreached by the other party, and, without negligence upon his own part, really deceived as to the terms of the contract, he would be entitled to be relieved from its apparent obligations. A negligent omission to inform himself as to the truth of the representations when he had an opportunity so to do, or might, by the exercise of reasonable diligence, have done, would amount to a waiver upon his part, and he would thereafter be estopped to impeach the contract upon grounds against which the exercise of reasonable care would, in the first instance, have protected him. Fraud is exceedingly subtle in its nature. There are infinite means by which it can be accomplished. In its conception human ingenuity is limitless in its capabilities. It is therefore impossible to state any general rule by which particular frauds are to be identified. Classification is almost, if not quite, impossible. It may be perpetrated by willful misrepresentations made by one person to another, with a design to mislead and which

do actually mislead another. It may be perpetrated by signs and tricks, and even silence may in some instances amount to fraud. Judicial veneration for the rule of evidence which pronounces a written contract the highest and best evidence of the agreement between the parties, and denies to either the privilege of adding to or taking from such contract by the introduction of parol evidence, cannot successfully protect such a contract when it is assailed upon the ground of fraud in its procurement. The purpose of the parol evidence in such cases is not to add to, take from or vary the terms of a valid written agreement, but its primary object is to disprove the existence of the agreement. According to the plea of this defendant in the present case, the agent of the plaintiff perpetrated upon him a gross, willful and glaring fraud. He was induced to sign this paper upon a willful misrepresentation by this agent as to its contents, and under such circumstances that he did not have the opportunity of informing himself by a personal inspection thereof as to the real contents of the paper. The defendant was the depot agent, at work in his office; the negotiations looking toward the making of the sale of the safe were in progress; it had been expressly stipulated by the agent that, in the event the defendant bought, he would not be required to take the safe, if by a given time he should conclude that he did not desire it. The agent of the plaintiff had bought his ticket to leave upon an approaching train, did not call upon the defendant to sign the paper until the train had about arrived upon which he, the agent, was to depart; to the remonstrance of the defendant against so hastily signing the paper, the agent of the plaintiff responded by saying " there is nothing in it except the reservation of title in us until the safe is paid for." Whatever suspicions might have existed in the mind of the defendant in regard to the matter, were allayed by this candid and ap-

parently spontaneous statement upon the part of the agent as to what the paper contained. It was a stipulation which was of vital consequence to this defendant, intentionally omitted by the agent of the plaintiff, and, according the record, with a purpose to perpetrate a fraud. According to the contract as originally agreed upon, before the time for its delivery, the defendant notified the plaintiff that he did not desire the safe; the plaintiff nevertheless shipped it, and he declined to receive it. If his plea be true, the written contract to which his signature was fraudulently procured to be attached does not represent the true contract between himself and the plaintiff; and we think this defendant shows himself free from substantial fault in this matter. We cannot understand how or wherein he has been guilty of any such negligence as would estop him from setting up, in reply to the suit of this plaintiff, the fraud of this agent in the procurement of this contract. For a further discussion of the principles here involved, see *Chapman* v. *Atlanta Guano Co.*, 91 *Ga.* 821, and cases cited. We think therefore the court erred in striking defendant's plea, and the judgment must, accordingly, be                                                    *Reversed.*